**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SHIRIN NANETTE STALLINGS,** | **Civil Action No. 15-7488 (MCA)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **MARY CRUZ, et al.,** | |
| **Defendants.** | |

**ARLEO, United States District Judge:**

## I. INTRODUCTION

Plaintiff's Complaint, brought pursuant to 42 U.S.C. § 1983, was docketed on October 14, 2015 (ECF No. 1), and the Court previously granted her application to proceed *in forma pauperis*. (ECF No. 2.) Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B). For the reasons explained in this Opinion, Plaintiff's Complaint will proceed in part and be dismissed in part. With respect to the dismissed claims and Defendants, Plaintiff is granted leave to file an Amended Complaint within 30 days of her receipt of this Opinion and accompanying Order.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently incarcerated at Edna Mahan Correctional Facility for Women ("E.M.C.F.W."), and her Complaint alleges that Defendants S.C.O. Mary Cruz and S.C.O. Maria Mercado, correctional officers at E.M.C.F.W., escorted Plaintiff to South Hall Detention following an alleged incident in "Max Food Service." (ECF No. 1, Complaint at ¶¶ 1-2.) While

awaiting entry to South Hall Detention, S.C.O. Cruz "slammed [Plaintiff's] face into a window and then again into the detention gate" while Plaintiff's hands were cuffed behind her back. (*Id.* at ¶ 2.) S.C.O Mercado allegedly "held the left side of [Plaintiff] while S.C.O Cruz slammed [her] face into the window and then into the detention gate.

According to Plaintiff's Complaint, Defendant Sgt. Joseph Socolof, a supervisor, ignored standard operating procedure in two "vital" ways: first, by permitting S.C.O Cruz to escort Plaintiff to South Hall Detention, because the "reporting officer," in this case Cruz, "is not supposed to escort the inmate that they are writing up to lock"; and second, by permitting a non-supervisor, in this case S.C.O. Mercado, to accompany S.C.O. Cruz. (*Id.* at ¶ 3.) Elsewhere in her Complaint Plaintiff alleges that these three Defendants "conspire[d] to assault [her]". (*See* ECF No. 1, page 4, Complaint at A-C.)

After the assault, Defendant LPN Adedato Oladapo performed a body assessment on Plaintiff in the Max. Hospital. (*Id.* at ¶ 4.) Defendant Sgt. Socolof was also present. (*Id.*) Although Plaintiff had several documented head injuries from the assault, and was dizzy and losing balance, no medical treatment was provided to Plaintiff by Defendant Oladapo. (*Id.*) Plaintiff further alleges that she was not placed on any observation for a possible concussion. (*Id.*)

With respect to the incident, Plaintiff also alleges that S.C.O. Cruz filed a false report alleging that Plaintiff did not follow a direct order given to Plaintiff in "Max Food Service," and that S.C.O. Mercado also falsified a report to support Cruz' assault. (*Id.* at ¶¶ 1, 2.) Plaintiff additionally alleges that Sgt. Socolof wrote a false disciplinary report. (*Id.* at ¶ 3.) The Sergeant's charge was dismissed by a hearing officer, identified in the Complaint as Defendant G. Nolley. (*Id.* at ¶ 3.) The charge written by S.C.O. Cruz, identified as .256 in the Complaint,

falsely alleged that Plaintiff refused to move, and Defendant Nolley found Plaintiff guilty of this charge despite video evidence showing that Plaintiff was moving. (*Id.* at ¶ 5.) Plaintiff received 15 days detention, 15 days loss of recreational privileges (L.O.R.P.), and 90 days administrative segregation. On October 3, 2014, Defendant Helen Adams upheld the charge but reduced Plaintiff's administrative segregation time to 60 days. Plaintiff alleges that Defendant Adams did not review the video tape, the Hearing Officer's statement, or any other evidence that supported Plaintiff's innocence, and found Plaintiff guilty without stating any reasons for the finding. (*Id.* at ¶ 5.) Plaintiff alleges that her "'guilty' verdict was overturned through Superior Court Remand." (*Id.*) Plaintiff seeks damages and various forms of injunctive relief. (*Id.* at page 7.)

## III. STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*, *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the

factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV. ANALYSIS

Plaintiff brings her claims pursuant to 42 U.S.C. § 1983.[1] A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, "to state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed or caused by a person acting under color of state law." *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### a. Eighth Amendment Claims

This Court has screened the Complaint in this action for dismissal and has determined that the Complaint states an Eighth Amendment excessive force claim under 42 U.S.C. § 1983 against Defendants S.C.O. Mary Cruz and S.C.O Maria Mercado. The Complaint also states an Eighth Amendment Claim for denial of adequate medical treatment against Defendant LPN

---

[1] The Court does not construe Plaintiff's Complaint to allege any claims for relief arising under state law, including state law tort claims or claims under the New Jersey Civil Rights Act ("NJCRA"). To the extent Plaintiff wishes to bring such claims, she must file an Amended Complaint.

Adedato Oladapo. Accordingly, dismissal of Plaintiff's Eighth Amendment claims against these Defendants is not warranted, and these claims shall proceed.

**b. Section 1983 Claim for Conspiracy**

The court also construes Plaintiff's allegation that Defendants S.C.O. Cruz, S.C.O. Mercado, and Sgt. Socolof "conspired to assault [her]" (*See* ECF No. 1, page 4, Complaint at A-C.), as an attempt to state a claim for conspiracy under section 1983. The Court has reviewed the Complaint and will permit the claim to proceed at this time against S.C.O Cruz and S.C.O. Mercado. The Court, however, will dismiss without prejudice the conspiracy claim against Defendant Sgt. Socolof. Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Although Plaintiff has alleged that Sgt. Socolof violated internal prison policies in permitting S.C.O. Cruz and S.C.O Mercado to escort Plaintiff to South Hall Detention, she has not provided any facts to suggest that Sgt. Socolof made an agreement with S.C.O Cruz and/or S.C.O. Mercado to allow them to assault Plaintiff and that Sgt. Socolof violated internal prison policies in order to facilitate the assault. As such, her conspiracy claim against Sgt. Socolof is conclusory at best.[2] *See Gibney*, 547 F. App'x at 113.

**c. Alleged Due Process Violations and Falsification of Evidence in Connection with Disciplinary Hearing**

The Court also construes Plaintiff to attempt to state claims under Section 1983 for denial of procedural due process and falsification of evidence in connection with her disciplinary

[2] The Court does not construe Plaintiff to allege a § 1983 conspiracy among Defendants in connection with the filing of the false disciplinary reports. However, because the Court finds

hearing, the outcome of which was allegedly overturned by a state court on July 29, 2015. Specifically Plaintiff contends in her Complaint as follows: (1) that Defendants S.C.O. Cruz, S.C.O. Mercado, and Sgt. Socolof filed false charges against her; (2) that the hearing officer, Defendant G. Nolley conducted deficient disciplinary hearings; and (3) that prison administrator Helen Adams provided inadequate review of those disciplinary hearings. For the reasons explained below, these claim are also dismissed without prejudice.

As noted above, the Court construes the allegations described in this section as an attempt to state a claim for deprivation of liberty without due process. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Under the Federal Due Process Clause, "process" is due an inmate only if the inmate first establishes a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest."); *see also Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 80 (3d Cir. 2014) ("In general, to prevail on [a procedural due process] claim, a plaintiff must show the deprivation of a protected liberty or property interest that occurred without due process of law.") (citing *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir.2008)).

---

that Plaintiff fails to state a claim for relief against Defendants in connection with their filing of the false disciplinary reports against Plaintiff, *see* Section IV.(c) *supra*, any such claim for conspiracy arising out of the filing of false disciplinary reports would be subject to dismissal. "[C]ivil conspiracy is [merely] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *McGovern v. City of Jersey City*, 98-CV-5186 (JLL), 2006 WL 42236, at *9 (D.N.J. Jan. 6, 2006) (citing *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n. 23 (D.N.J.1993)). As a result, "a § 1983 conspiracy claim is not actionable without an actual violation of § 1983." *Id.*

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or State law. *See Hewitt v. Helms,* 459 U.S. 460, 466 (1983); *Asquith v. Department of Corrections,* 186 F.3d 407, 409 (3d Cir. 1999). The Due Process Clause does not create a liberty interest in avoiding placement in restrictive prison conditions, but "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)[ .]" *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005) (citations omitted). Under *Sandin*, 515 U.S. at 484, state-created liberty interests are generally limited to "freedom from restraint" which imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Notably, at issue in *Sandin* was whether the plaintiff's thirty-day detention in disciplinary custody impacted any protected liberty interest under the Fourteenth Amendment. The Court concluded that the prisoner in *Sandin* did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day detention, although punitive, "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id.* at 486.

Here, Plaintiff has alleged that she received 15 days of detention, 15 days of lost recreational privileges, and 90 days of administrative segregation (Adseg), which was reduced to 60 days by Defendant Adams. (*See* ECF No. 1, Complaint at ¶ 5.) The denial of recreational privileges for fifteen days does not implicate a protected liberty interest.[3] Likewise, fifteen days

---

[3] In extreme circumstances, the denial of exercise or recreation can result in a constitutional violation under the Eighth Amendment. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)); *see also Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) ("Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."). However, the lack of exercise can only rise to a constitutional level "where

of detention and 60-90 days of administrative segregation, standing alone, do not implicate a protected liberty interest.[4] As explained by the Third Circuit, "administrative segregation only implicates a protectable liberty interest [sufficient to trigger due process protections] if it dramatically departs, in length of time or otherwise, from basic prison conditions." *Crawford v. Lappin*, 446 F. App'x 413, 415 (3d Cir. 2011) (citing *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir.2003)); *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) ("[P]lacement in administrative confinement will generally not create a liberty interest.")). "In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013) (citing *Sandin*, 515 U.S. at 486). With respect to duration, the Third Circuit has held that administrative segregation in the S.C.I. Graterford Restricted Housing Unit for periods as long as fifteen months does not create an atypical and significant hardship and, thus, does not deprive an inmate of a liberty interest. *See Griffin v. Vaughn*, 112 F.3d 703, 708

---

movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199. Hence, a constitutional violation will occur only when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated. Here, Plaintiff does not allege that she was denied recreation time for a prolonged period of time and does not allege that any tangible physical injury occurred. *See also McKune v. Lile*, 536 U.S. 24, 39 (2002) (noting that prisoner had conceded that there was no liberty interest at stake where prison discipline resulted in the "loss of his personal television; less access to prison organizations and the gym area; a reduction in certain pay opportunities and canteen privileges; and restricted visitation rights").

[4] In this regard, the Court notes that it is well-established that a prisoner has a liberty interest in good time credits. *See, e.g.*, *Denny v. Schultz*, 708 F.3d 140, 143 (3d Cir. 2013) (A prisoner has a liberty interest in good time credits); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (same). Plaintiff, however, has not alleged that she lost credits, and because she alleges that the disciplinary decision was overturned by the state court, it appears that any loss of credits would have been restored when the disciplinary decision was vacated.

(3d Cir.1997); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest); *Jenkins v. Hayman*, No. CIVA 09-4989 (FLW), 2010 WL 1838399, at *10 (D.N.J. May 6, 2010) (same); *cf. Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir.2000) (holding that eight years in administrative custody is atypical and implicates a protected liberty interest); *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (vacating dismissal of due process claim where inmate held in administrative segregation for six years).

Here, even if the Court assumes the truth of Plaintiff's allegations that prison guards filed false charges against her and prison officials conducted a deficient disciplinary hearing and a deficient review of those proceedings, Plaintiff falls well short of stating a valid procedural due process claim under § 1983 because the discipline imposed does not implicate a protected liberty interest. As such, the Court dismisses this claim without prejudice as to all Defendants.

Plaintiff also has failed to state a claim with respect to the allegedly false disciplinary charges. Indeed, Plaintiff alleges that the disciplinary charges were overturned by a state court. To the extent the false disciplinary charges were overturned, they could not affect the duration of her sentence. As discussed above, she has not alleged that they caused her any atypical and significant hardship. As such, she has failed to assert that Defendants deprived her of a protected liberty interest at all. *See Durham v. New Jersey Dep't of Corr.*, No. CIV.A.09-4314PGS, 2010 WL 1379783, at *11 (D.N.J. Mar. 29, 2010) (explaining same) (citing *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265 (6th Cir. Dec.6, 2000); *Washington v. Madding*, 189 F.3d 476, 1999 WL 511125 (9th Cir. July 15, 1999)).

## V. CONCLUSION

For the reasons expressed in this Opinion, the Complaint is proceeded in part and dismissed in part pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). The Complaint states an Eighth Amendment excessive force claim under 42 U.S.C. § 1983 against Defendants S.C.O. Mary Cruz and S.C.O Maria Mercado. With respect to S.C.O Cruz and S.C.O Mercado, the Complaint also states a claim under 42 U.S.C. § 1983 for conspiracy to assault Plaintiff. The Complaint states an Eighth Amendment Claim for denial of adequate medical treatment against Defendant LPN Adedato Oladapo. The remaining claims and Defendants are dismissed without prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). To the extent she can cure the deficiencies with respect to these claims and Defendants, Plaintiff may file an Amended Complaint within 30 days of her receipt of this Opinion and accompanying Order. An appropriate Order follows.

Madeline Cox Arleo, U.S.D.J.

Date: 5/31, 2016