UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Chambers of
**Michael A. Hammer**
United States Magistrate Judge

Martin Luther King Jr. Federal
Bldg. & U.S. Courthouse
50 Walnut Street, Room 2042
Newark, NJ 07102
(973) 776-7858

July 18, 2016

To: Shirin Nanette Stallings
Plaintiff Pro Se
P.O. Box 4004
30 Route 513
Clinton, NJ 08809-4004

All counsel of record

### LETTER OPINION AND ORDER

RE:   **Shirin Nanette Stallings v. Mary Cruz, et al.**
      **Civil Action No. 15-7488 (MCA)(MAH)**

Dear Litigants:

Presently before the Court is Plaintiff pro se Shirin Nanette Stallings' application for Pro Bono Counsel pursuant to 28 U.S.C. § 1915(e)(1) [D.E. 9]. For the reasons set forth below, Plaintiff's application is denied.

### Background

This matter arises from a conflict that occurred during Plaintiff's incarceration at Edna Mahan Correctional Facility for Women ("E.M.C.F.W."). Plaintiff states that Defendants S.C.O. Mary Cruz and S.C.O. Maria Mercado, correctional officers at E.M.C.F.W., escorted Plaintiff to South Hall Detention following an incident in "Max Food Service." Compl., Oct. 14, 2015, D.E. 1, ¶¶ 1–2. While awaiting entry to South Hall Detention, Cruz "slammed [Plaintiff's] face into a window and then again into the detention gate" while Plaintiff's hands were cuffed behind her back. Id. ¶ 1. Mercado allegedly "held the left side of [Plaintiff] while . . . Cruz slammed [her] face into the window and then into the detention gate." Id. ¶ 2.

According to Plaintiff's Complaint, Defendant Sgt. Joseph Socolof, a supervisor, ignored standard operating procedure in two "vital" ways: (1) by permitting Cruz to escort Plaintiff to South Hall Detention, because the reporting officer, in this case Cruz, "[was] not supposed to escort the inmate that they are writing up to lock"; and (2) by permitting a non-supervisor, in this

1

case Mercado, to accompany Cruz. Id. ¶ 3. Elsewhere in her Complaint, Plaintiff alleges that these three Defendants "conspire[d] to assault [her]". Id. at 4.

After the assault, Defendant LPN Adedato Oladapo performed a body assessment on Plaintiff in the "Max. Hospital." Id. ¶ 4. Socolof was also present. Id. Although Plaintiff had several documented head injuries from the assault, was dizzy, and losing balance, no medical treatment was provided to Plaintiff by Oladapo. Id. Plaintiff also states that she was not placed on any observation for a possible concussion. Id. With respect to the incident, Plaintiff alleges that Cruz filed a false report noting that Plaintiff did not follow a direct order given to Plaintiff in the "Max Food Service," that Mercado falsified a report to support Cruz's assault, and that Socolof wrote a false disciplinary report. Id. ¶¶ 1–3. The Sergeant's charge was dismissed by a hearing officer, identified in the Complaint as Defendant Nolley. Id. Moreover, Nolley found Plaintiff guilty of the charge written by Cruz which stated that Plaintiff refused to move, despite video evidence showing that Plaintiff was moving. Id. ¶ 5.

Plaintiff received fifteen days detention, fifteen days loss of recreational privileges, and ninety days administrative segregation. Id. On October 3, 2014, Defendant Helen Adams upheld the charge, but reduced Plaintiff's administrative segregation time to sixty days. Id. Plaintiff alleges that Adams did not review the video tape, the Hearing Officer's statement, or any other evidence that supported Plaintiffs innocence, and found Plaintiff guilty without stating any reasons for the finding. Id. Plaintiff states that her "'guilty' verdict was overturned through Superior Court Remand." Id. Plaintiff seeks damages and various forms of injunctive relief. Id. at 7.

Plaintiff then filed this application for Pro Bono Counsel. See Mot. to App. Counsel, June 16, 2016, D.E. 9. In her application, Plaintiff argues that she is entitled to appointed counsel because: (1) she is unable to comprehend the law; (2) she has been in multiple special education classes as a child; (3) she would not be able to perform a proper factual investigation; (4) the case is likely to turn on credibility; (5) the case requires expert testimony; (6) E.M.C.F.W. has prohibited inmate paralegals from offering her assistance; and (7) she is unable to afford an attorney. Id. at 3.

## Discussion

In civil cases, neither the Constitution nor any statute gives civil litigants the right to appointed counsel. Parnham v. Johnson, 126 F.3d 454, 456–57 (3d Cir. 1997). District courts, however, have broad discretion to determine whether appointment of counsel is appropriate under 28 U.S.C. § 1915(e). Montgomery v. Pinchack, 294 F.3d 492, 498 (3d Cir. 2002) (citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)). Appointment of counsel may be made at any point in the litigation, including sua sponte by the Court. Montgomery, 294 F.3d at 498 (citing Tabron, 6 F.3d at 156).

In the Third Circuit, a court considers the framework established in Tabron. Montgomery, 294 F.3d at 498–99. Under the Tabron framework, the Court must first assess "whether the claimant's case has some arguable merit in fact and law." Montgomery, 294 F.3d

at 499 (citing Tabron, 6 F.3d at 155).  If the applicant's case has some merit, the Court considers the following factors:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

Parham, 126 F.3d at 457–58 (citing Tabron, 6 F.3d at 155–56, 157 n.5).  This list is not exhaustive, but provides guideposts for the Court.  Montgomery, 294 F.3d at 499 (citing Parham, 126 F.3d at 457).  A court's decision to appoint counsel "must be made on a case-by-case basis."  Tabron, 6 F.3d at 157–58.  Also, the Court of Appeals for the Third Circuit has stated that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases."  Montgomery, 294 F.3d at 499 (citing Parnham, 126 F.3d at 458).

As a threshold matter, Plaintiff's case has merit for the purposes of Tabron application.  On May 31, 2016, the Court screened Plaintiff's Complaint and found that it states an Eighth Amendment excessive force claim and a conspiracy claim under 42 U.S.C. § 1983 against Defendants S.C.O. Cruz and S.C.O. Mercado, as well as an Eighth Amendment denial of medical treatment claim against Defendant LPN Adedato Oladapo.  See Order, May 31, 2016, D.E. 6.  The remaining claims were dismissed without prejudice.  Id.

Next, Plaintiff's case must be analyzed under each of the Tabron post-threshold factors.  Ultimately, consideration of the Tabron factors does not demonstrate that appointment of counsel is warranted at this time.

First, Plaintiff appears to be able to present her case.  When considering this first factor, courts generally review a plaintiff's education, literacy, prior work experience, and prior litigation experience.  Tabron, 6 F.3d at 156.  In addition, courts may weigh any restraints placed upon a plaintiff by virtue of the fact that he or she is a prisoner.  Montgomery, 294 F.3d at 501; Tabron, 6 F.3d at 156.  Plaintiff, here, is not a sophisticated "jailhouse lawyer," Montgomery, 294 F.3d at 501, since this was the first and only claim that she has brought since incarceration; however, the fact that Plaintiff lacks the skills does not direct the Court to grant her request for counsel.  See Gordon v. Gonzalez, 232 Fed.Appx. 153, 157 (3d Cir.2007) (finding that counsel was not required although pro se plaintiff erred at trial).  A review of Plaintiff's Complaint indicates that she has provided a detailed explanation of her cause of action and sufficiently articulated the factual circumstances, even including specific dates and times surrounding the alleged incidents.  Although Plaintiff argues that she is unable to comprehend the law and has been in multiple special education classes as a child, Plaintiff communicates clearly and has demonstrated a basic understanding of the actions she should take in furtherance of her claim.  Moreover, Plaintiff's letters to the court and portions of her Complaint are typewritten.  Thus, and in contrast to Montgomery, Plaintiff does not appear to have experienced any significant

difficulty obtaining the documents necessary to support her allegations and adequately pursue her case. For these reasons, this factor weighs in favor of appointment of counsel.

Second, Plaintiff's claims do not involve complex legal issues. Complexity supports appointment "where the law is not clear, [as] it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." Tabron, 6 F.3d at 156 (quoting Macklin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981)); accord Montgomery, 294 F.3d at 502. Courts also consider "the proof going towards the ultimate issue and the discovery issues involved." Parham, 126 F.3d at 459; see also Montgomery, 294 F.3d at 502–03 (finding appointment appropriate when, despite simple legal issues, discovery and presentation difficulties compromised plaintiff's case). Here, appointment of counsel is not warranted because the factual and legal issues involved in the case are not complicated. Plaintiff provides no explanation in her pro bono application as to why her claims contain complex legal issues. Accordingly, the second Tabron factor weighs against Plaintiff because it does not appear that her claims present complex legal issues.

The third factor for consideration is the degree to which factual investigation will be necessary and the ability of Plaintiff to pursue such investigation. It has been noted that "courts should consider a prisoner's inability to gather facts relevant to the proof of his claim." Montgomery, 294 F.3d at 503 (citing Tabron, 6 F.3d at 156). "Courts should further consider that 'it may be difficult for indigent plaintiffs to understand the complex discovery rules' in investigating their claims." Id. (citing Parham, 126 F.3d at 460). At this stage, Plaintiff has not shown that it will be unduly difficult for her to obtain the relevant institutional records, which should be reasonably available. Unlike cases where documents are missing and where defendants are resistant in responding to discovery requests, this situation does not presently exist in the case. See, e.g., Montgomery, 294 F.3d at 503–04 (finding this factor in favor of granting pro bono counsel where missing key records prevented plaintiff from building a sufficient case through document requests and plaintiff encountered significant resistance from defendants in responding to his discovery motions, including defendants' failure to respond to plaintiff's interrogatories). The claims appear to involve a relatively discreet set of facts, many of which Plaintiff presumably has personal knowledge, or at a minimum, is equipped to investigate. Plaintiff will have access to the discovery tools in the Federal Rules of Civil Procedure to investigate her claims as well as any defenses or counterclaims. See Fed. R. Civ. P. 26. Thus, the third Tabron factor also weighs against appointment of counsel.

Fourth, it is premature for the Court to conclude that this case will turn on credibility determinations. Because "it is difficult to imagine" a case where credibility is not important, the Court of Appeals for the Third Circuit has specified that "when considering this factor, courts should determine whether the case [is] solely a swearing contest." Parnham, 126 F.3d at 460. At this early stage of the litigation, the extent to which this case will rest on credibility determinations is not yet apparent. Accordingly, this factor militates neither in favor nor against appointing counsel.

The fifth factor for consideration is whether the case will require the testimony of expert witnesses. Appointment of counsel may be warranted where the case will require testimony from expert witnesses. Tabron, 6 F.3d at 156. Plaintiff asserts that "[t]his case requires expert

testimony." Mot., D.E. 9, at 3.  However, Plaintiff does not describe what claim or subject matter will necessitate such expert testimony.  Since the substance and necessity of expert testimony has not yet been established, the fifth factor weighs against appointing pro bono counsel.

Sixth, there is no evidence in the record that Plaintiff can afford or attain counsel on her own behalf.  The District Court approved Plaintiff's application to proceed in forma pauperis, see Order, Oct. 30, 2015, D.E. 2, and there is nothing in the record to indicate any change in Plaintiff's financial situation, as Plaintiff has remained in prison since that time.  Furthermore, Plaintiff has indicated that her efforts to obtain counsel have been unsuccessful because (1) some have not responded to her and (2) others do not think the case is "financially feasible."  Mot., D.E. 9, at 3.  While more efforts can be made, at present Plaintiff's inability to retain counsel weighs in favor of granting Plaintiff's motion.  Nonetheless, indigency alone does not warrant the appointment of counsel absent satisfying the other Tabron factors.

This record does not meet most of the Tabron factors, and, therefore, the Court finds that appointment of pro bono counsel is inappropriate at this time.  Cf. Parnham, 126 F.3d at 461 (finding appointment appropriate where most factors are met).  For all the reasons set forth above, the Court denies Plaintiff's application for the appointment of pro bono counsel without prejudice.

## Conclusion

A balancing of the factors set forth above does not weigh in favor of granting Plaintiff's request for counsel at this time.  Therefore, Plaintiff's application of the appointment of pro bono counsel [D.E. 9] is denied without prejudice.

So Ordered,

*/s Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

5